**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION at COLUMBUS**
(*Electronically Filed*)

| | |
|---|---|
| COLUMBUS CENTRAL OHIO BUILDING AND CONSTRUCTION TRADES COUNCIL, AFL-CIO, )<br><br>*Plaintiff,* )<br><br>v. )<br><br>COLUMBUS REGIONAL AIRPORT AUTHORITY d/b/a JOHN GLENN COLUMBUS INTERNATIONAL AIRPORT, and CHIEF RONALD GRAY, )<br><br>*Defendants.* ) | CIVIL ACTION NO. _____<br><br>JUDGE _____ |

**PLAINTIFF COLUMBUS CENTRAL OHIO BUILDING AND CONSTRUCTION TRADE COUNCIL, AFL-CIO'S COMPLAINT FOR DECLARATION OF RIGHTS, TEMPORARY RESTRAINING ORDER AND OTHER INJUNCTIVE RELIEF**

\* \* \* \* \* \* \* \*

   **COMES NOW** the Plaintiff, COLUMBUS CENTRAL OHIO BUILDING AND CONSTRUCTION TRADES COUNCIL, AFL-CIO (the "Council"), by counsel, and hereby states the following claims for relief against the Defendants, COLUMBUS REGIONAL AIRPORT AUTHORITY d/b/a JOHN GLENN COLUMBUS INTERNATIONAL AIRPORT, and CHIEF RONALD GRAY (hereinafter, collectively the "Defendants"). The Council herein seeks declaratory and injunctive relief against Defendants.

# I. <u>PRELIMINARY STATEMENT</u>

The relief the Council seeks herein is simple. Pursuant to its and its members' rights under the First Amendment to the United States Constitution and Article 1, Section 3 of the Ohio Constitution, the Council seeks to preserve and exercise its constitutional rights to engage in lawful and peaceful free speech activity related to its labor dispute with the Central Ohio Regional Airport Authority ("CRAA"). Specifically, the Council seeks to display an inflatable rat commonly associated with labor disputes and known as "Scabby the Rat" and a handheld banner in a grassy area adjacent to a parking lot to publicize its labor dispute with CRAA to members of the public invited to attend a CRAA sponsored new airport terminal groundbreaking event on December 9, 2024 at the John Glenn Columbus International Airport ("CMH") ("Free Speech Activity"). Four (4) persons will be present during the Free Speech Activity, two (2) of whom will stand by Scabby the Rat and two (2) of whom will hold the banner. However, based on information and belief, CRAA will deny the Council a permit to engage in the Free Speech Activity  even though Defendants are permitting invited members of the public to park and assemble for the groundbreaking event at or near the very same location where Defendants are barred from engaging in Free Speech Activity. Further, CRAA has refused to speak with the Council about its request for a permit, despite repeated attempts by the Council, with CRAA claiming there is time to consider the Council's position even though the groundbreaking event is scheduled for 10:00 a.m. on December 9, 2024.

The Council seeks declaratory and injunctive relief against Defendants, ordering them to permit Plaintiff to engage in Free Speech Activity at or around the Blue Long Term Shuttle Lot, located at 3801 International Gateway, Columbus, Ohio 43219 (which, upon information and belief, is the location where members of the public invited to attend the groundbreaking event have been instructed by CRAA to park their vehicles), or any location that Defendant relocates the parking for and/or the groundbreaking event ("Free Speech Activity Site"), as further set forth in its application and described, below.

In support thereof, the Council states as follows:

## II. PARTIES, JURISDICTION AND VENUE

1. The Plaintiff, COLUMBUS CENTRAL OHIO BUILDING AND CONSTRUCTION TRADES COUNCIL, AFL-CIO, is a labor organization comprised of member construction trade unions that represent thousands of construction workers (Local Unions and District Councils), working together to promote the interests of construction workers, organized labor and high-quality, safe and cost-effective construction projects. The Council's principal office is located at 39 Goodale Blvd # 202, Columbus, OH 43212. The Council has capacity to sue under Fed. R. Civ. Proc. 17(b)(3)(A), because it is an unincorporated association suing to enforce a substantive right existing under the United States Constitution on its behalf and on behalf of its member construction trade unions.

2. The Defendant, COLUMBUS REGIONAL AIRPORT AUTHORITY d/b/a JOHN GLENN COLUMBUS INTERNATIONAL AIRPORT ("CRAA"), is a

governmental entity created pursuant to Ohio Rev. Code § 308.01, *et seq.*, for the purpose of governing the operation of CMH, Rickenbacker International Airport and Bolton Field Airport. CRAA may sue and be sued in its corporate name.

3. The Defendant, CHIEF OF POLICE AND DIRECTOR OF PUBLIC SAFETY RONALD GRAY ("Chief Gray") is the Chief of Police for CMH. Chief Gray, *inter alia*, has primary responsibility for the enforcement of CRAA's rules and regulations and other Ohio laws within CMH. Chief Gray is sued in his official capacity.

4. Defendants are "state actors" within the meaning of 42 U.S.C. § 1983.

5. This Court has original federal question jurisdiction over this action under 28 U.S.C. § 1331, because Plaintiff's first claim for relief arises under the First Amendment to the United States Constitution, along with 42 U.S.C. §§ 1983 & 1988, and 28 U.S.C. §§ 2201 & 2202. This Court likewise has supplemental jurisdiction over Plaintiff's claims arising under Article 1, Section 3 of the Ohio Constitution pursuant to 28 U.S.C. § 1367, because that claim is so related to claims in this action within the Court's original jurisdiction that it forms part of the same case or controversy under Article III of the United States Constitution.

6. The Defendants are all subject to the *in personam* jurisdiction of this Court because they are at home within the State of Ohio, and this action arises from Defendants' acts and omissions which have taken place or are threatened to take place within the State of Ohio.

7. Venue is proper in this Court under 28 U.S.C. § 1391 and other applicable

law, because the deprivations of Plaintiff's constitutional rights and/or future deprivations of its constitutional rights are threatened and likely to occur in the county or counties encompassed by the Eastern Division of the United States District Court for the Southern District of Ohio.

### III. <u>FACTUAL ALLEGATIONS</u>

8. The legal and factual allegations contained in Complaint Paragraph(s) One (1) through Seven (7) are repeated and re-alleged as if fully set forth herein.

9. Due to rapid growth in the region, CRAA is undertaking a major, $2 billion new terminal construction project at CMH. Upon information and belief, CMH currently serves approximately eight million travelers per year, but that figure is expected to grow to 13 million travelers per year by 2028. Likewise, the Mid-Ohio Regional Planning Commission estimates the area's population will grow from 2.4 million in 2020 to nearly 3.15 million residents by 2050.

10. CRAA, as the new terminal construction project owner, hired Colorado-based construction manager at risk, Hensel Phelps Construction Co. ("Hensel Phelps") to perform preconstruction and construction services for the CMH new terminal project.

11. In the summer of 2023, the Council informed CRAA that it wanted to negotiate a Community Benefits Agreement ("CBA") with Hensel Phelps and the CRAA covering the new terminal construction project at CMH. The CBA sought by the Council was a legally binding agreement between the Council and CRAA and/or Hensel Phelps that would promote the use of a local and diverse workforce,

guarantee that all construction workers performing covered work enjoy equal rights and treatment on the job site, regardless of the contractor they worked for, including access to the cost-free, legally enforceable grievance and arbitration procedure in the CBA that empowers workers to protect and enforce their rights on the job, wages in accordance with the CBA, health insurance benefits required by the CBA, retirement benefits required by the CBA, and a prohibition on union-sponsored strikes and other activities that could result in construction delays and cost overruns.

12. Initially, CRAA, by and through its Chief Executive Officer and President, Joseph R. Nardone ("Nardone"), instructed the Council to negotiate with Hensel Phelps, which, according to Nardone, had the full authority to enter into a CBA covering CRAA's new terminal project.  On or about November 1, 2023, Hensel Phelps proposed to the Council a CBA that that would have permitted every contractor and subcontractor on the job site to opt-out of becoming a signatory to the CBA, which the Council did not acquiesce to because the opt-out provision rendered the proposed CBA illusory and denied construction workers the full and equal protections of a legally binding CBA.

13.  While the Council believed the November 1, 2023, CRAA/Hensel Phelps proposal was intended to cause the Council to abandon negotiations out of frustration with CRAA's bargaining position, the Council did not break off negotiations. Instead, the Council continued to insist that CRAA agree to a CBA that provided equal rights and equal treatment for all construction workers

performing covered work.

14. Understandably concerned with CRAA's negotiation position as set forth in Hensel Phelps' proposals, the Council, along with other local area labor unions and community organizations attended the CRAA Board of Directors ("BOD") Meeting on January 30, 2024. During the Meeting, the Council and other local community stakeholders urged CRAA to intervene in the negotiations to ensure that the new terminal was covered by a CBA that benefited all stakeholders.

15. Unable to force the Council to agree to an illusory CBA or cause it to abandon negotiations, CRAA modified its position, as set forth in a February 12, 2024 proposal from Hensel Phelps, and insisted that the Council agree to exempt all Disadvantaged Business Enterprises (DBEs) and Diversity Business Partners (DBPs) (collectively "DBE/DBP") firms from the obligation to become a party to the CBA.

16. The effect of CRAA's new position was to deny employees of DBE/DBP firms equal rights and equal protections under a CBA covering CRAA's new terminal project compared to construction workers employed by non-DBE/DBP firms, including but not limited to denying employees access to a cost-free, legally enforceable grievance and arbitration procedure in the CBA to enforce their right to receive wages in accordance with the CBA, denying employees health insurance benefits required by the CBA and denying employees retirement benefits required by the CBA . This exclusionary provision applied to impacted construction workers for one reason and one reason only: they are employed by a DBE/DBP firm or

construction contractor.

17.   Outraged by such a proposal, let alone from state actors, members of the labor, civil rights communities, including the Coalition of Black Trade Unionists, the A. Phillip Randolf Institute, and the Coalition of Labor Union Women, sent letters to the CRAA BOD members requesting meetings with individual BOD members to discuss CRAA's demand to exclude employees of DBE/DBP firms from equal rights and protections under a CBA. However, CRAA BOD members refused and failed to meet to discuss their concerns, and they did not express any public disagreement with CRAA's position.

18.   The Council continued to urge CRAA to change its position, citing the divisive and damaging effects a CBA that denied equal rights and protections to employees of DBE/DBP employees on a government construction project would have on construction workers, DBE/DBP contractors and the reputation of the region.

19. While urging CRAA to include construction workers employed by DBE/DBP contractors under a CBA, the Council had previously agreed to CRAA's aspirational goal of twenty-five percent (25%) DBE/DBP participation on the new terminal project. The Council also proposed language obligating the Council, CRAA and Hensel Phelps to conduct outreach events to DBE/DBP contractors, as well as other provisions designed to assist the parties in reaching said goal.

20. Nardone would eventually attend multiple negotiation sessions with the Council on behalf of CRAA. However, he steadfastly refused to modify CRAA's position, despite the fact that a direct result of CRAA's position was to deny an

entire class of construction workers equal rights and equal treatment under a CBA based solely on the fact that they worked for a DBE/DBP contractor.

21. Nardone knew or should have known that the Council would not agree to a CBA that denied workers—minority and/or non-minority—equal rights and treatment under a CBA based solely on the fact that their employer was a DBD/DBP contactor. Indeed, CRAA insisted on this position for the purpose of preventing the parties from reaching a CBA after an earlier proposal to allow all contractors to opt-out of the CBA failed to cause the Council to abandon negotiations.

22. The last negotiation session occurred on or about May 22, 2024. Nardone represented CRAA. Once again, CRAA refused to relent on denying employees of DBE/DBP contractors full and equal rights under a CBA. The Council was unwilling to enter into an agreement that would have resulted in separate and unequal conditions on the new terminal project and no further negotiations occurred between the parties.

23. Upon information and belief, on the morning of Monday, December 9, 2024, CRAA intends to conduct a ceremonial groundbreaking for the new terminal project at CMH:



We invite you to join us for the ceremonial groundbreaking of our new terminal the part of this transformational project that will help us provide a first-class customer experience and meet the needs of our growing region.

The new terminal at John Glenn Columbus International Airport will be the start of it all – prioritizing ease, improving efficiency, and delighting passengers.

**John Glenn Columbus International Airport**
**Monday, December 9, 2024**
**10 a.m.**

RSVP

Attendance is by invitation only, and we kindly ask that you RSVP by November 22, 2024. Once registered, we'll follow up with detailed directions and parking information.

24. Furthermore, upon information and belief, attendees at the groundbreaking event will park at the Blue Long Term Shuttle Lot of CMH.

25. Given CRAA's insistence on divisive proposals that prevented the parties from reaching a CBA, brought shame upon Central Ohio and sent the false message to workers that employment by a DBE/DBP contractor justifies fewer rights and unequal treatment on a construction site, the Council intends to engage in Free Speech Activity at the Free Speech Activity Site in protest of CRAA and Nardone's actions described, above:



*The area circled in green and marked by the letter "X" is the general Free Speech Activity Site where the Council intends to display Scabby the Rat and a handheld banner.

26. On or about November 25, 2024, the Council, through counsel, submitted an application to display the inflatable rat and banner and to permit four (4) persons to stand by the rat and hold a banner during the display period. CRAA does not have an application form that specifically applies to stationary inflatables or

stationary banners; therefore, the Council used CRAA's Application for Picketing John Glenn Columbus International Airport (the "Application"), via an email to CRAA's legal counsel, requesting permission for the Council to do so. A copy of the Council's Application is annexed hereto as Plaintiff's *Exhibit A*.



*A picture of Scabby the Rat as displayed by an affiliated labor organization in connection with an unrelated labor dispute at a different location.

27. Per CRAA's Policy for Picketing and Leaflet/Literature Distribution Activity, if CRAA does not issue a permit in the within seven (7) business days,

excluding holidays, the Application is considered denied.

28.  To date, CRAA has failed or refused to issue a permit.  Based on information and belief, CRAA intends to deny the Council's application for a permit.

29. Per the CRAA Policy for Picketing and Leaflet/Literature Distribution Activity, CRAA only allows the following four "areas designated by CRAA" to be used for picketing (in red). All of which are in the *passenger terminal*, and not one of them is located near the Free Speech Activity Site:





30. On its face, the CRAA's Policy for Picketing and Leaflet/Literature Distribution Activity do not include the Free Speech Activity Site as an area designated by CRAA for Free Speech Activity or similar, peaceful action related to a labor dispute.

31. However, the CRAA Policy for Picketing and Leaflet/Literature Distribution Activity does allow the designation of ad hoc "alternate picketing areas" in the event of "labor disputes" at the discretion of CRAA:

  e.  For labor disputes between any employer occupying any part of the Airports, and any employees who are organized in a collective bargaining unit, alternate picketing areas may be authorized as necessary in order that the labor dispute not hinder or prevent the lawful work or employment of persons other than such employer, and that the same will not tend to induce violence, cause a breach of the peace or other unlawful conduct, or obstruct or interfere with free and uninterrupted use of said premises by other tenants or occupants or by other persons lawfully using the Airport.

32. The CRAA Policy for Picketing and Leaflet/Literature Distribution Activity notwithstanding, by all accounts, the Free Speech Activity Site is a grassy

area on the side of the road that leads directly into the Blue Long Term Shuttle Lot and is near a road that is freely accessible to the public.

33. Indeed, the Free Speech Activity Site is near numerous hotels and until September of this year[1] was a stone's throw away from a McDonald's restaurant:



34. The Council's proposed Free Speech Activity Site is situated adjacent to an offramp from International Gateway—the same street which has those publicly available features.

35. The Council's proposed Free Speech Activity at the Free Speech Activity Site will be conducted peacefully, and picketers will not impede the ingress or egress of traffic through any of the Blue Long Term Shuttle Lot's entrances, or on the public street.

---

[1] *See* Barbara J. Perenic, *Construction at John Glenn airport in Columbus razes McDonald's to make way for terminal*, THE COLUMBUS DISPATCH, *available at* https://www.dispatch.com/picture-gallery/business/travel/2024/10/25/john-glenn-airport-construction-razes-mcdonalds-new-terminal-planned/75122111007/, (Oct. 25, 2024).

36. The Council intends to peacefully engage in Free Speech Activity at the Free Speech Activity Site on the morning of December 9, 2024, at the same location and during the very same time period CRAA is permitting invited members of the public to park and assemble to celebrate CRAA's new terminal project, while no doubt, planning to keep those invitees in the dark with respect to its own conduct and positions related to a CBA on the project.

37. The First Amendment permits and protects the right of the Council and its members to engage in the Free Speech Activity described, above. However, CRAA has not issued a permit to the Council to engage in Free Speech Activity at the Free Speech Activity Location  Based on information and belief, CRAA will fail and refuse to issue a permit prior to the groundbreaking event at 10;00 a.m. on December 9, 2024.

## IV. CLAIMS FOR RELIEF

### AS AND FOR A FIRST CLAIM FOR RELIEF
### DECLARATION OF RIGHTS & INJUNCTION PURSUANT TO 42 U.S.C. § 1983, U.S. Const. amend. I

38. The legal and factual allegations contained in Complaint Paragraph(s) One (1) through Thirty-Seven (37) are repeated and re-alleged as if fully set forth herein.

39. The First Amendment guarantees, among other things, that government may make no law "abridging the freedom of speech." U.S. Const. amend. I. The First Amendment has been incorporated against the states. *Gitlow v. New York*, 268 U.S. 652 (1925).

40. The grassy area where the Council intends to engage in  Free Speech

Activity is a traditional public forum, triggering the traditional public forum analysis under First Amendment analysis and heightened scrutiny. *McCullen v. Coakley*, 573 U.S. 464, 476-477 (2014). The Government's ability to restrict speech in such locations is "very limited." *Ibid.*

41. Restrictions in such areas can be upheld only if they are "reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, they are narrowly tailored to serve a significant governmental interest, and they leave open alternative channels for communication of the information.'" *Id.* at 477.

42. The CRAA's Policy for Picketing and Leaflet/Literature Distribution Activity as applied here are not content neutral, because the Free Speech Activity Site is located near a public street, and other forms of expressive activity are permitted in the area, such as, *inter alia*, the operation of a vehicle with advertisements. Upon information and belief, CRAA does nothing to police any such expressive activity at or around the Free Speech Activity Site. Further, CRAA has specifically invited members of the public to park and attend a new terminal groundbreaking event at or near the very same location.

43. In other words, the CRAA's Policy for Picketing and Leaflet/Literature Distribution Activity is not content-neutral because it is selectively enforced to permit the celebration of CRAA and its project by invited members of the public while denying the Council the right to engage in Free Speech Activity related to the same governmental activity.

44. Moreover, even if the CRAA's Policy for Picketing and Leaflet/Literature Distribution Activity do not amount to content and/or viewpoint discrimination, their total prohibition of displaying Scabby the Rat and a banner at the Free Speech Activity Site is not narrowly tailored to serve a significant government interest and is therefore unconstitutional on that basis as well.

45. The CRAA's Policy for Picketing and Leaflet/Literature Distribution Activity therefore violate Plaintiff's free speech rights.

46. The First Amendment also guarantees the right "of the people peaceably to assemble." This guarantee has also been incorporated against the states. *DeJonge v. Oregon*, 299 U.S. 353 (1937).

47. Assembly on the public streets and sidewalks is among the guarantees protected by the First Amendment. *Shuttlesworth v. Birmingham*, 394 U.S. 147 (1969).

48. These rights, being fundamental rights, trigger strict scrutiny. *Clark v. Jeter*, 486 U.S. 456, 461 (1988).

49. The CRAA's Policy for Picketing and Leaflet/Literature Distribution Activity, as applied to Plaintiff and its members, when assembling and engaging in Free Speech Activity in the grassy area near the Blue Long Term Shuttle Lot which CRAA has designated for the groundbreaking event, is not narrowly tailored to achieve a compelling governmental interest. It is thus also a violation of the Freedom of Assembly guaranteed by the First Amendment.

50. Defendants therefore deprived or intend to deprive Plaintiff and its

members of their First Amendment rights of speech and assembly, under color of state law.

51. Plaintiff therefore seeks declaratory relief, a temporary restraining order, a preliminary injunction and a permanent injunction, restraining and enjoining the enforcement of the CRAA's Policy for Picketing and Leaflet/Literature Distribution Activity against Plaintiff to prevent Plaintiff engaging in the Free Speech Activity at the Free Speech Activity Site, in addition to reasonable attorney's fees and costs under 42 U.S.C. § 1988.

**AS AND FOR A SECOND CLAIM FOR RELIEF**
**DECLARATION OF RIGHTS & INJUNCTION PURSUANT TO Ohio Const.**
**Art. I, § 3**

52. The legal and factual allegations contained in Complaint Paragraph(s) One (1) through Fifty-One (51) are repeated and re-alleged as if fully set forth herein.

53. Plaintiff and its members have a fundamental constitutional right under Article I, Section 3 of the Ohio Constitution to engage in the Free Speech Activity in the traditional public fora of the streets, sidewalks and public rights-of-way, to include the grassy area near the Blue Long Term Shuttle Lot.

54. Plaintiff therefore requests a declaration that Defendants' conduct, along with the CRAA Policy for Picketing and Leaflet/Literature Distribution Activity as applied to Plaintiff's right to engage in the Free Speech Activity at the Free Speech Activity Site, violates Article I, Section 3 of the Ohio Constitution and requests injunctive relief to abate the constitutional violations thereof.

## V. **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays this Court for Judgment:

A. Entering a temporary restraining order, preliminary injunction and permanent injunction restraining and enjoining the Defendants from engaging in any conduct interfering with the Council's U.S. Const. amend. I, & Ohio Const. Art. I, § 3 rights thereby requiring that Defendants permit Plaintiff and members of the Council to display Scabby the Rate and a banner in the grassy area adjacent the Blue Long Term Shuttle Lot, located at 3801 International Gateway, Columbus, Ohio 43219.

B. Declaring that the conduct of the Defendants and the application of the Policy for Picketing and Leaflet/Literature Distribution Activity as described herein are unconstitutional;

C. Declaring that the requirement to identify persons who intend to stand by Scabby the Rate and hold the banner when applying for a permit is unconstitutional under *Talley v. California*, 362 U.S. 60 (1960).

D. Awarding Plaintiff its costs; and

E. Granting Plaintiff all additional relief that may be equitable, just and proper including a reasonable award of attorneys' fees pursuant to 42 U.S.C. § 1988.

Dated: December 4 , 2024,                    Respectfully submitted,

s/Clement L. Tsao
Clement L. Tsao (90105)
HERZFELD, SUETHOLZ, GASTEL
LENISKI and WALL, PLLC
600 Vine Street, Suite 2720

Cincinnati, Ohio 45202
Phone: (513) 381-2224
clement@hsglawgroup.com

Jonathan C. Wentz (67674)
WENTZ, MCINERNEY, PEIFER
& PETROFF, LLC
14 E. Gay Street, FL 4
Columbus, Ohio 43215
Phone: (614) 756-5566
jwentz@lawforlabor.com

***Trial Attorneys for Columbus
Central Ohio Building and
Construction Trades Council,
AFL-CIO***



**Application for Picketing**
**John Glenn Columbus International Airport**

1. **Organization or Individual Applicant**

Name: Columbus/Central Ohio Building & Construction Trades Council

Address (physical address, not a P.O. Box): 939 Goodale Blvd # 202

City: Columbus     State: OH     Zip Code: 43212

Telephone (Must be available 24 hours a day): 614-361-2114

E-mail: dhager@columbusconstruction.org

2. **Person(s) responsible for supervision and conduct of activities:**

Name: Dorsey Hager, Jr.

Address: 939 Goodale Blvd. #202

City: Columbus     State: OH     Zip Code: 43212

Telephone (Must be available 24 hours a day): 614-361-2114

E-mail: dhager@columbusconstruction.org

Name: _____

Address (physical address, not a P.O. Box): _____

City: _____ State: _____ Zip Code: _____

Telephone (Must be available 24 hours a day): _____

E-mail: _____

3. **Description of Proposed Activities:**

Publicize a dispute between the Columbus and Central Ohio Building and Construction Trades and CRAA over the absence of a community benefits agreement on the new terminal project to coincide with CRAA's groundbreaking ceremony. Based on information and belief, said groundbreaking invitees will park in the Blue Lot; therefore the above-activities will take pace at or near the Blue Lot entrance (see the attached Exhibit 1, Exhibit 2 and Exhibit 3 ). If the location above is incorrect, then applicant hereby applies to engage in said activities at or near the parking or groundbreaking location.

4. **Description of signage or other items to be displayed (if any):**

A stationary, inflatable rat (a/k/a "Scabby the Rat") and stationary, handheld banner.

Scabby is approximately 12 feet tall and 5 feet wide. It is secured to the ground using ropes and weights.

The banner is approximately 10 feet long and 3 feet wide. It is held by two persons, one at each end of the banner.

_____

Copies of signage or other items to be displayed during the activity must be provided to CRAA Legal Services Office at Legal@ColumbusAirports.com at least 72 hours before use.

Exhibit A to Complaint

5.  **Date/Time Requested for Conduct of Activities:** (Permit applications should be submitted at least seven (7) days prior to the commencement of the activity for which the permit is sought and no earlier than thirty (30) days prior to the commencement of the activity.  Applications for activities at a terminal cannot be for more than a seven (7) day period.)

Date From:  12/9/24            Date To:  12/9/24

Hours:     From    8:30 AM              (a.m.) or (p.m.)

               To        12:30 PM            (a.m.) or (p.m.)

6.  **Approximate total number of people to be involved in conduct of activities:**   See 7, below

    **Approximate number of people to be involved in conduct of activities at any one time:**    4

**Note: Picketing** - Maximum of **two (2) people** at each location.  No more than a total of **four (4) people** involved in picketing on Airport property at any one time.
(Note: Two persons will stand near the rat and two persons will hold the banner referenced above.

7.  **Name of Each Participant (attach a separate sheet of paper if necessary):**

| | | | |
|---|---|---|---|
| 1. | Dorsey Hager, Jr. | 2. | Timothy  Ely |
| 3. | Sara Guice | 4. | Michael Egbert |
| 5. | | 6. | |
| 7. | | 8. | |
| 9. | | 10. | |
| 11. | | 12. | |
| 13. | | 14. | |
| 15. | | 16. | |
| 17. | | 18. | |
| 19. | | 20. | |

**Application Certification**

I am authorized to submit this application on behalf of the above-named applicant and that the information contained herein is true and correct to the best of my knowledge, information, and belief. It is understood that deviations from the provisions of this authorization application including the conduct of activities which disrupt airport operations or interfere with normal activities of airport or impede traffic or pedestrian flow will constitute grounds for termination of any Authorization and Permit issued to the applicant.

| | |
|---|---|
| Signature of Applicant/ Authorized Representative | Signature of Applicant/ Authorized Representative |
| Dorsey Hager, Jr. | |
| Printed name | Printed name |
| Exec. Secretary-Treasurer, C/COBCTC | |
| Title (if applicable) | Title (if applicable) |
| 11/25/24 | |
| Date | Date |

**Indemnification**

Pursuant to Section V(a)(x) of the Columbus Regional Airport Authority's ( "CRAA") Policy for Picketing and Leaflet/Literature Distribution Activity at John Glenn Columbus International Airport, Rickenbacker International Airport, and Bolton Field Airport ("Airport" or "Airports"), the applicant(s) hereby agrees and undertakes to indemnify and hold harmless CRAA, the Airport(s), the airlines operating at the Airports, the Airport's concessionaires, tenants, and lessees, and all their respective officials, officers, employees and agents, against any claims that arise or are made against any of the foregoing in connection with the activities of the applicant(s) or its agents or representatives at the Airport(s).

Signature of Applicant/ Authorized Representative
Dorsey Hager, Jr.
Printed name
Exec. Secretary-Treasurer, C/COBCTC
Title (if applicable)
11/25/24
Date

**Policy**

I have read the entire Columbus Regional Airport Authority – Policy for Picketing and Leaflet/Literature Distribution Activity at John Glenn Columbus International Airport, Rickenbacker International Airport and Bolton Field Airport ("Policy") and, by my signature attest to understanding its contents. My signature, as an authorized representative of the applicant(s), hereby binds the applicant(s) to the provisions of the Policy.

Signature of Applicant/ Authorized Representative
Dorsey Hager, Jr.
Printed name
Exec. Secretary-Treasurer, C/COBCTC
Title (if applicable)
11/25/24
Date

Not applicable - See Application Exhibits 1, 2 and 3

**Picketing Locations at John Glenn Columbus International Airport**



Columbus and Central Ohio Building and Construction Trades Council Application Exhibit 2



Columbus/Central Ohio Building and Construction Trades Council Application Exhibit 1



Note: "X" above designates the east side of the entrance to the Blue Lot

**Lot addresses**

**Green shuttle lot:**
3256 E 17th Ave, Columbus, OH 43219

**Red shuttle lot:**
3795 International Gateway, Columbus, OH 43219

**Blue shuttle lot:**
3801 International Gateway, Columbus, OH 43219

**Cell phone waiting lot:**
4229 International Gateway, Columbus, OH 43219

**Walking lot:**
4370 International Gateway, Columbus, OH 43219

**Short & long term parking garage:**
4600 International Gateway, Columbus, OH 43219

Columbus and Central Ohio Building and Construction Trades Council Application Exhibit 3

